**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| NICOLAS FELIX, | |
| Plaintiff, | **No. 1:18-cv-04442-NGG-SJB** |
| v. | |
| CHASE BANK, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**GREENBERG TRAURIG, LLP**
The MetLife Building
200 Park Avenue
New York, New York 10166
(212) 801-9200

*Attorneys for Defendant JPMorgan Chase Bank N.A.,*
*f/k/a Chase Bank USA, N.A., improperly named as Chase Bank*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ....................................................................................................... 2

ARGUMENT ............................................................................................................. 4

    I.     Legal Standards .......................................................................................... 4

    II.    Plaintiff's Second Amended Complaint Fails to State a Viable Claim ................. 5

        A.    Plaintiff Fails to State a Claim Under the Civil Rights Act. ...................... 5

        B.    Plaintiffs' Negligence Claims Are Preempted By Federal Law. ............... 8

        C.    Even if the Claim Were Not Preempted, Plaintiff Fails to State a Claim for Negligent Infliction of Emotional Distress................................ 9

        D.    Even if the Claim Were Not Preempted, Plaintiff Fails to State a Claim for Gross Negligence................................................................ 11

        E.    The Economic Loss Doctrine Bars Plaintiff's Negligence Claims........... 14

        F.    Plaintiff's Request for Punitive Damages Lacks Legal Basis. ................. 15

CONCLUSION....................................................................................................... 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Akyar v. TD Bank US Holding Co.*,
    No. 18-CV-379 (VSB), 2018 U.S. Dist. LEXIS 155789 (S.D.N.Y. Sept. 12,
    2018) ..............................................................................................................................7, 8

*Alexander v. Westbury Union Free Sch. Dist.*,
    829 F. Supp. 2d 89 (E.D.N.Y. 2011) ...............................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................5

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
    949 F. Supp. 2d 486 (S.D.N.Y. 2013) ..............................................................................14

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ...............................................................................................5

*Clarke v. Trans Union, LLC*,
    No. 1-cv-2991(CM), 2014 U.S. Dist. LEXIS 158552 (S.D.N.Y. Nov. 3, 2014) ......................9

*Cortec Indus. v. Sum Nat'l Holding, L.P.*,
    949 F.2d 42 (2d Cir. 1991) .............................................................................................2, 5

*Deutsche Bank Sec., Inc. v. Rhodes*,
    578 F. Supp. 2d 652 (S.D.N.Y. 2008) ..............................................................................15

*Eliahu v. Jewish Agency for Israel*,
    919 F.3d 709 (2d Cir. 2019) ...............................................................................................5

*Farash v. Cont'l Airlines, Inc.*,
    574 F. Supp. 2d 356 (S.D.N.Y. 2008), *aff'd* 337 Fed. Appx. 7 (2d Cir. 2009) ......................12

*Fernandez v. Windmill Distrib. Co.*,
    159 F. Supp. 3d 351 (S.D.N.Y. 2016)................................................................................2

*Francis Coll. v. Al-Khazraji*,
    481 U.S. 604, 107 S. Ct. 2022, 95 L. Ed. 2d 582 (1987)............................................6

*Frederick v. JetBlue Airways Corp.*,
    No. 14-CV-7238 (DLI)(RER), 2016 U.S. Dist. LEXIS 44406 (E.D.N.Y. Mar.
    31, 2016), *aff'd on other grounds*, 671 Fed. Appx. 831 (2d Cir. 2016) ................................15

*Garland-Sash v. City of N.Y.*,
    No. 04-CV-0301 (NGG)(LB), 2005 U.S. Dist. LEXIS 42676 (E.D.N.Y. Sep.
    1, 2005) (Garaufis, D.J.) ....................................................................................................9

*Grasso v. Chase Manhattan Bank*,
  No. 01-Civ. 4371, 2002 U.S. Dist. LEXIS 6667 (S.D.N.Y. Apr. 17, 2002)............................9

*Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.*,
  715 F. App'x 54 (2d Cir. 2017) ...........................................................................................16

*Jones v. Nat'l Commun. & Surveillance Networks*,
  05 Civ 3461 (AKH), 409 F. Supp. 2d 456 (S.D.N.Y. 2006) ...................................................6

*Kelly v. Chase Manhattan Bank*,
  717 F. Supp. 227 (S.D.N.Y. 1989) ..................................................................................10, 11

*Kourani v. U.S. DOJ*,
  213 Fed. App'x 79 (2d Cir. 2007).........................................................................................10

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011)....................................................................................................5

*Latifi v. Gonzales*,
  430 F.3d 103 (2d Cir. 2005)..................................................................................................10

*Longman v. Wachovia Bank, N.A.*,
  702 F.3d 148 (2d Cir. 2010)....................................................................................................8

*Macpherson v. JPMorgan Chase Bank, N.A.*,
  65 F.3d 45 (2d Cir. 2011)........................................................................................................9

*McGee v. WebBank Inc.*,
  19-cv-549 (BMC)(LB), 2019 U.S. Dist. LEXIS 56576 (E.D.N.Y. Apr. 2,
  2019) .......................................................................................................................................9

*McNight v. Middleton*,
  699 F. Supp. 2d 507 (E.D.N.Y. 2010) ....................................................................................6

*Mortise v. U.S.*,
  102 F.3d 693 (2d Cir. 1996)..............................................................................................9, 10

*Nadesan v. Citizens Fin. Grp.*,
  673 Fed. App'x 47 (2d Cir. 2016)...........................................................................................6

*Nevin v. Citibank, N.A.*,
  107 F. Supp. 2d 333 (S.D.N.Y. 2000).....................................................................................9

*Pasternack v. Lab. Corp. of Am. Holdings*,
  807 F.3d 14 (2d Cir. 2015)....................................................................................................11

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*,
  No. 14-CV-10104 (VEC), 2017 U.S. Dist. LEXIS 145044 (S.D.N.Y. Sep. 7,
  2017) .....................................................................................................................................14

*Sanders v. Grenadier Realty, Inc.*,
  367 Fed. App'x 173 (2d Cir. 2010).........................................................................................7

*Schnall v. Marine Midland Bank*,
  225 F.3d 263 (2d Cir. 2000)...............................................................................................2, 5

iii

*Smith v. Hogan*,
  794 F.3d 249 (2d Cir. 2015)............................................................................................5

*Spain v. Ball*,
  928 F.2d 61 (2d Cir. 1991)............................................................................................5

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*,
  734 F. Supp. 2d 368 (S.D.N.Y. 2010).........................................................................15

*Wegmann v. Young Adult Inst., Inc.*,
  No. 15 Civ. 3815 (KPF), 2016 U.S. Dist. LEXIS 26674 (S.D.N.Y. Mar. 2,
  2016) ..............................................................................................................................8

**State Cases**

*Berger v. Bd. of Regents*,
  178 A.D.2d 748 (3d Dep't 1991)..................................................................................12

*Colnaghi, USA. v. Jewelers Prot. Servs., Ltd.*,
  81 N.Y.2d 821 (1993) ..................................................................................................12

*Garrity v. Lyle Stuart, Inc.*,
  40 N.Y.2d 354 (1976) ..................................................................................................15

*Green v. Leibowitz*,
  118 A.D.2d 756, 500 N.Y.S.2d 146 (2d Dep't 1986) ...................................................9

*Ryan v. IM Kapco, Inc.*,
  88 A.D.3d 682 (2d Dep't 2011) ...................................................................................12

**Federal Statutes**

15 U.S.C. § 1681(b) ...........................................................................................................8

15 U.S.C. § 1681h(e) ..........................................................................................................9

15 U.S.C. § 1681t(b)(1)(F) .................................................................................................9

42 U.S.C. § 1981a .............................................................................................................15

42 U.S.C. § 1981 ............................................................................................................4, 6

**Rules**

Fed R. Civ. P. 8(a) .........................................................................................................1, 4

Fed. R. Civ. P. 12(b)(6)......................................................................................................1

**Other Authorities**

*Nigeria Presidential Election Results 2019*,
  BBC News (Last Results Update Feb. 26, 2019),
  https://www.bbc.co.uk/news/resources/idt-f0b25208-4a1d-4068-a204-
  940cbe88d1d3 ..............................................................................................................10

*Why INEC's Yakubu Declared Buhari Winner of 2019 Presidential Election*,
   Vanguard (Feb. 27, 2019), https://www.vanguardngr.com/2019/02/why-inecs-yakubu-declared-buhari-winner-of-2019-presidential-election/...........................................10

Defendant JPMorgan Chase Bank, N.A., formerly known as Chase Bank USA, N.A. and improperly named herein as Chase Bank ("Chase"), by and through its undersigned counsel, submits this memorandum of law in support of its motion to dismiss Plaintiff's Second Amended Complaint, filed July 26, 2019 (the "Second Amended Complaint" or "SAC"), under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for such other and further relief as this Court deems just and proper.

## PRELIMINARY STATEMENT

Plaintiff Nicolas Felix ("Plaintiff"), a pastor of a Brooklyn church, brings this action against Chase asserting that Chase is liable to him for $1 million in damages, which he claims he incurred as a result of Chase's closure of his bank accounts and furnishing of credit reports. Allegedly because of these actions, which were permitted by the account agreements governing Plaintiff's accounts, he asserts that Chase has "terribly damaged Plaintiff and irretrievably shattered his lifelong ambition" to be president of Nigeria. (SAC ¶ 25).  Yet, Plaintiff's Second Amended Complaint, his third pleading in this action, fails to state a claim with respect to any of the three claims asserted.

First, Plaintiff's discrimination claim under section 1981 of the Civil Rights Act fails because Plaintiff has failed to adequately allege that Chase acted with any racial animus in closing Plaintiff's accounts, and because section 1981 does not provide a cause of action for discrimination based on national origin.

Second, Plaintiff's negligence claims fail because they are preempted by federal law.

Third, Plaintiff's negligent infliction of emotional distress claim fails because Plaintiff has not come close to establishing the elements necessary to state such a claim.

Fourth, Plaintiff's gross negligence claim fails because the governing account agreements authorized Chase's conduct in closing the accounts and furnishing the Church's delinquencies to

consumer reporting agencies as Plaintiff's own, and because it is barred by the economic loss doctrine.

Fifth, Plaintiff's request for punitive damages should be denied because it is both legally and factually unsupported.

Because the Second Amended Complaint fails to meet the minimum federal pleading requirements, it should be dismissed with prejudice.

## <u>BACKGROUND</u>

Plaintiff alleges that he is a Nigerian-American pastor at Miracle Center International Church, an evangelical Christian church in Brooklyn (the "Church").  (SAC ¶¶ 14-15, 17). Plaintiff alleges that he and the Church both had bank accounts and credit card accounts with Chase.  (SAC ¶¶ 18-19).  Plaintiff admits that the Church had a negative balance, but claims that the Church was up-to-date in its credit card payments.  (*Id.* ¶ 19).  Plaintiff also admits that he was the sole signatory on the Church's accounts.  (*Id.* ¶ 21).

Plaintiff opened a personal checking account at Chase in August 2007 under his former name, Nicolas Uagbor.  (Deck Decl. ¶ 4).[1]  In April 2014, he opened checking and savings accounts at Chase on behalf of the Church.  (*Id.* ¶ 10).  He executed a signature card in connection with

---

[1]     This Court may properly consider the accompanying declarations of Laura Deck and Michael Kiebzak and the exhibits attached thereto, as the information and documents are part of Plaintiff's account history, are integral to Plaintiff's claims, and were transmitted to Plaintiff.  *See, e.g., Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000) (considering cardholder agreement, account histories, and monthly statements submitted on a motion to dismiss); *Cortec Indus. v. Sum Nat'l Holding, L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (considering documents submitted on motion to dismiss that plaintiffs had in their possession or had knowledge of and relied on in bringing suit).  Alternatively, Chase respectfully requests that the Court convert Chase's motion, in whole or in part, to one for summary judgment and consider these materials. *See, e.g., Cortec*, 949 F.2d at 48 ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."); *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 357-58 (S.D.N.Y. 2016) ("Whether a court is considering either total or partial conversion, '[t]he essential inquiry . . . is whether the non-movant 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'") (internal citations omitted).

opening these accounts in 2014.  (*Id.* ¶ 11; Exh. O).  He also executed a signature card in 2017 reflecting that Plaintiff's last name changed from Uagbor to Felix.  (*Id.* ¶ 12; Exh. P).  Each of these accounts was governed by Chase's deposit account agreement (the "DAA") (*id.* ¶ 8), which expressly provides that: "Either you or the Bank may close your Account at any time with or without cause."  (*Id.*, Exh. A at 31; *see also id.*, Exh. G at 15; Exh. K at 13).

Subsequently, in July 2014, Plaintiff applied for and opened a Chase business credit card on behalf of the Church.  (*See* Kiebzak Decl. ¶¶ 3-4, Exh. A).  In signing the credit card disclosure for the Church's credit card (the "Disclosure"), Plaintiff agreed that he was "personally responsible for payment of all balances incurred on all cards associated with this account."  (*See id.* ¶ 5, Exh. B).  The credit card agreement (the BCA") governing the Church's credit card similarly provides, "You [the applicant] are responsible for any use of your account by an authorized user or anyone else that you permit to use your account."  (*Id.* ¶ 7, Exh. C, at 2).  Moreover, the BCA provides, "We are not obligated to honor every transaction, and we may close or suspend your account. Sometimes we close accounts based not on your actions or inactions, but on our business needs." (*Id.*, Exh. C, at 4).  The BCA also authorizes Chase to "provide information about you and your account to credit reporting agencies and others" (*Id.* at 10).

Plaintiff alleges that "in May 2018, without cause and without any prior notice or warning, Plaintiff's three accounts were closed as well as the three accounts maintained by the corporation -Church."  (*Id.* ¶ 20).  Plaintiff alleges he became aware that his accounts were closed while he was in Nigeria campaigning for the presidency, and that when he returned, he learned that other Nigerian church employees also had their accounts closed without warning, and that the only employee whose account was not closed was not of Nigerian origin.[2]  (*Id.* ¶¶ 20-22).  Plaintiff

---

[2]      Plaintiff has not pleaded the race or ethnicity of this individual.

3

further alleges that the Church's negative credit balance was transferred to him, and that Chase filed a negative report with the three major credit bureaus.  (*Id.* ¶ 23).  Plaintiff alleges that when he inquired about the status of his accounts, he learned from a Chase employee "that there was a notice from the Chase headquarter that lead [sic] to the closing of the account and she could not say anything more than that."  (*Id.* ¶ 23; *see also id.* ¶ 26).

Plaintiff alleges that "Chase engaged in banking practices that unfairly discriminated against him on the basis of his race, ethnicity and country of origin."  (*Id.* ¶ 5).[3]  He further claims that he was not personally liable for the Church's debt and that Chase erroneously filed a negative credit report against him.  (*Id.* ¶ 7).  He asserts that the closing of his accounts and the negative credit reports prevented him from obtaining the funds necessary to support his presidential campaign in Nigeria, and that he lost the election as a result.  (*Id.* ¶¶ 24, 46).  Plaintiff seeks $1 million in damages, along with other relief.  (*Id.* ¶¶ 7-10).

Based on the above allegations, Plaintiff asserts the following three causes of action: (1) discrimination in violation of the Civil Rights Act, 42 U.S.C. § 1981; (2) negligent infliction of emotional distress; and (3) gross negligence.  Each cause of action should be dismissed, and the Second Amended Complaint dismissed in its entirety, for the reasons set forth below.

## ARGUMENT

### I.   Legal Standards

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts to "'state a claim to relief that is plausible on its face.'"

---

[3]   Plaintiff makes passing reference to allegations that Chase breached the implied covenant of good faith and fair dealing, but does not appear to assert any such claim against Chase.  (SAC ¶ 6).  To the extent Plaintiff intended to assert such a claim, he has provided no allegations supporting any such claim, which accordingly fails.

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Plausibility requires more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.   A complaint must be dismissed if it alleges facts that, even if assumed to be true, could not establish the elements of a claim.   *See, e.g., Eliahu v. Jewish Agency for Israel,* 919 F.3d 709, 712 (2d Cir. 2019).   Furthermore, dismissal with prejudice is proper where a plaintiff is unable to allege any facts sufficient to support its claim.   *Spain v. Ball*, 928 F.2d 61, 62-63 (2d Cir. 1991).

In deciding a 12(b)(6) motion, the court's consideration is limited to the face of the complaint, documents attached to the complaint or incorporated by reference,[4] and to documents integral to the complaint, such as "[c]ardholder [a]greement[s], account history and monthly statements because they are integral to [Plaintiff's] claims and [he] had notice of that information." *Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000) (citing *Cortec Indus. v. Sum Nat'l Holding, L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

## II.   <u>Plaintiff's Second Amended Complaint Fails to State a Viable Claim</u>

### A.  Plaintiff Fails to State a Claim Under the Civil Rights Act.

Plaintiff's first cause of action is styled as a "racial discrimination" claim under the Civil Rights Act, but the thrust of the Second Amended Complaint is that Chase discriminated against Plaintiff based on his country of origin (Nigeria).  (*See, e.g.,* SAC ¶ 5 (alleging "discrimination

---

[4]       Plaintiff has attached an "Affidavit of Facts" to the Second Amended Complaint (ECF No. 25-1). Even if it were notarized and made under penalty of perjury (which it is not), this affidavit is not properly submitted and should not be considered on this motion.  *See Smith v. Hogan*, 794 F.3d 249, 253 (2d Cir. 2015) (affidavit attached to plaintiff's complaint "is not a 'written instrument' for purposes of Rule 10(c), or otherwise properly considered to be part of the complaint on a motion to dismiss").

. . . on the basis of his race, ethnicity and country of origin" based on Chase's treatment of Nigerian-versus non-Nigerian Americans), ¶ 25 ("Defendant was motivated by country of origin discrimination"), ¶ 28 ("That Chase targeted the accounts of only the Nigerian employees of the Church Organization while it did not touch that of the non-Nigerian employee(s) is another [sic] evidence that Chase was motivated by Country of origin discrimination"), ¶ 30 ( "Defendant was blindfolded by country of origin discrimination"), ¶ 44 ("It is clear that Chase and its manager's conduct was motivated by the President's public campaign of calumny against Nigerians")).  To the extent Plaintiff is asserting a claim under 42 U.S.C. § 1981 for discrimination on the basis of national origin, however, section 1981 does not provide a cause of action.  *See Nadesan v. Citizens Fin. Grp.*, 673 Fed. App'x 47 (2d Cir. 2016) ("Section 1981 provides a cause of action for discrimination on the basis of race, which includes ancestry or ethnic characteristics, but not for discrimination based solely on the place or nation of [the plaintiff's] origin.") (quoting Saint *Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613, 107 S. Ct. 2022, 95 L. Ed. 2d 582 (1987)) (internal quotations omitted; alteration in original).  On this basis alone, Plaintiff's claim should be dismissed.

Even if the Second Amended Complaint could be construed as asserting a claim for racial discrimination, it is insufficiently pleaded to survive a motion to dismiss because it does not specifically plead any facts supporting an inference of racial animus.  *See McNight v. Middleton*, 699 F. Supp. 2d 507, 529-30 (E.D.N.Y. 2010) (dismissing Civil Rights Act claims because the plaintiff "failed to plead any non-speculative facts supporting an inference of racial animus, let alone intentional discrimination"); *see also Jones v. Nat'l Commun. & Surveillance Networks*, 05 Civ. 3461 (AKH), 409 F. Supp. 2d 456, 470-71 (S.D.N.Y. 2006) (dismissing claims under Civil

Rights Act because complaint was "devoid of any facts from which it can be inferred that there was any discriminatory intent," which must be specifically pleaded).

Here, Plaintiff attempts to raise an inference of racial animus by pleading disparate treatment.  He claims that "Chase targeted the accounts of only the Nigerian employees of the Church Organization while it did not touch that of the non-Nigerian employee(s)."  (SAC ¶ 28).  However, the vague allegation that Chase closed the accounts of an unspecified number of Church-affiliated employees, all of whom—like the "majority of [the Church's] worshippers" (*id.* ¶ 15)—allegedly were Nigerian-American, does not raise a plausible inference of racial (or even country of origin) animus.  *See Sanders v. Grenadier Realty, Inc.*, 367 Fed. App'x 173, 174-75 (2d Cir. 2010) (allegations merely consistent with discrimination, that non-black residents were granted subsidies, "stop[ped] short of the line between possibility and plausibility of entitlement to relief" and did not support an inference of racial animus).  Notably, there is no allegation that Chase closed the accounts of any individuals not affiliated with the Church, whether Nigerian, African-American, or otherwise.

Plaintiff also fails to plead "that he was similarly situated in all material respects to the individuals to whom he seeks to compare himself."  *Akyar v. TD Bank US Holding Co.*, No. 18-CV-379 (VSB), 2018 U.S. Dist. LEXIS 155789, at *9 (S.D.N.Y. Sept. 12, 2018) (dismissing racial and ethnic discrimination claim brought under Section 1981 based on closure of bank accounts) (internal quotations omitted).  The Second Amended Complaint is silent as to the number of Nigerian employees whose accounts allegedly were closed, and inconsistent regarding the number of non-Nigerian employees whose accounts remained open.  (*Compare* SAC ¶ 22 ("The only account not closed belonged to the non-Nigerian employee [i.e., singular]"), *with* ¶ 28 ("employee(s)" accounts were not closed)).  The respective positions of the allegedly affected and

non-affected employee(s) and their duties, responsibilities, and/or level of involvement with the Church are not pleaded.  Nor are the type(s) of transactions Plaintiff and other allegedly affected employees engaged in prior to the disclosures pleaded.  (*See* SAC ¶ 20 (pleading only that "Plaintiff was in dire need of what he needed the withdrawal for")).  Plaintiff also fails to plead the race, ethnicity, or national origin of the unaffected employee(s), other than to plead that s/he or they are not of Nigerian origin.  Absent such specificity, it is impossible to infer that Chase's actions amounted to discrimination based on racial or even national origin animus.  *See Akyar*, 2018 U.S. Dist. LEXIS 155789, at *9-11 (no plausible inference of racial animus raised where plaintiff failed to plead, *inter alia*, "how the comparators utilized their bank accounts"); *Wegmann v. Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2016 U.S. Dist. LEXIS 26674 (S.D.N.Y. Mar. 2, 2016) (plaintiff "failed to plead even 'minimal support'" for assertion that she and five male pension plan participants were "similarly situated" and "[a]s such, Plaintiff's Complaint fails to set forth enough facts to 'nudge [her] claims across the line from conceivable to plausible'").  Accordingly, Plaintiff's Civil Rights Act claim should be dismissed.

### B.  Plaintiffs' Negligence Claims Are Preempted By Federal Law.

Plaintiff asserts two state-law negligence claims against Chase -- negligent infliction of emotional distress and gross negligence -- both of which are premised on allegations that Chase improperly attributed the Church's debt to Plaintiff personally, and furnished erroneous credit reports accordingly.  (*See* SAC ¶¶ 34-49).  Both claims should be dismissed because they are preempted by federal law.

The Fair Credit Reporting Act (the "FCRA") "regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2010) (citing 15 U.S.C. § 1681(b)). The FCRA expressly preempts state law claims involving allegations of false reporting to

consumer reporting agencies.  15 U.S.C. § 1681t(b)(1)(F) (broadly preempting state law regarding any subject matter regulated by section 1681s-2 "relating to the responsibilities persons who furnish information to consumer reporting agencies . . ."); *see also* § 1681h(e) ("no consumer may bring an action [for] . . . negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . .").  Courts routinely dismiss state law claims as preempted under the FCRA.  *See, e.g., Macpherson v. JPMorgan Chase Bank, N.A.*, 65 F.3d 45, 46-47 (2d Cir. 2011) ("[Plaintiff] acknowledges that his allegations of false reporting concern conduct regulated by § 1681s-2.  Read literally, therefore, § 1681t(b)(1)(F) bars [his] state law tort claims."); *McGee v. WebBank Inc.*, 19-cv-549 (BMC)(LB), 2019 U.S. Dist. LEXIS 56576, at *5 (E.D.N.Y. Apr. 2, 2019) (dismissing fraud claim as preempted because it "concern[s] subject matter regulated by relevant provisions of the FCRA"); *Clarke v. Trans Union, LLC*, No. 1-cv-2991(CM), 2014 U.S. Dist. LEXIS 158552, at *19 (S.D.N.Y. Nov. 3, 2014) (dismissing negligent infliction of emotional distress claim as falling "squarely within the scope of the FCRA's preemption provision").  Because Plaintiff's negligence claims concern conduct that is regulated by the FCRA, they are expressly preempted, and should be dismissed.

### C. Even if the Claim Were Not Preempted, Plaintiff Fails to State a Claim for Negligent Infliction of Emotional Distress.

Under New York law, "[a] claim for negligent infliction of emotional distress must be premised upon a breach of duty which 'unreasonably endanger[s] the plaintiff's physical safety.'" *Garland-Sash v. City of N.Y.*, No. 04-CV-0301 (NGG)(LB), 2005 U.S. Dist. LEXIS 42676, at *16 n.8 (E.D.N.Y. Sep. 1, 2005) (Garaufis, D.J.) (quoting *Green v. Leibowitz*, 118 A.D.2d 756, 757 (2d Dep't 1986)); *accord Mortise v. U.S.*, 102 F.3d 693, 696 (2d Cir. 1996); *Grasso v. Chase Manhattan Bank*, No. 01-Civ. 4371 (AKH), 2002 U.S. Dist. LEXIS 6667, at *13 (S.D.N.Y. Apr. 17, 2002); *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 346 (S.D.N.Y. 2000).

Plaintiff's claim for negligent infliction of emotional distress should be dismissed because he pleads no facts suggesting that the closing of his bank and credit card accounts, and the filing of negative credit reports, ever endangered his physical safety.[5]  Rather, he pleads that he suffered "embarrass[ment]" when an unspecified transaction was declined (SAC ¶ 20), and "mental distress" when he finished in third place in the 2019 Nigerian presidential election, which he claims was caused by his lack of access to funds or credit.[6]  (*Id.* ¶¶ 24, 29 (alleging that Plaintiff "cries whenever he remembers how he may never have another opportunity to win the presidency again at least not in the next four years if ever")).

In addition, New York law is clear that "[a] cause of action for negligent infliction of emotional distress may only lie where a defendant owes a 'special duty' to the plaintiff." *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011); *Kelly v. Chase Manhattan Bank*, 717 F. Supp. 227, 235 (S.D.N.Y. 1989).  "The duty in such cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society."  *Mortise*, 102 F.3d at 696.

---

[5]     Plaintiff devotes four pages of his pleading to a discussion of the legal doctrine of piercing the corporate veil.  (SAC ¶¶ 34-43).  Veil piercing is an equitable remedy applied by the judiciary in the context of legal proceedings.  *See Morris v. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993) (veil piercing is based on "an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners").  There is no cause of action for "[u]nfair opening of the corporate veil" by a private party in its business dealings.  (SAC ¶ 34).  Veil piercing is in any event unnecessary where, as here, Plaintiff has direct contractual responsibility for the debts of the Church.  (*See* § II.D, *infra*).

[6]     The Court may take judicial notice of the fact that while Plaintiff placed third in the 2019 Nigerian presidential election, he finished with approximately 0.40% of the vote.  *See Nigeria Presidential Election Results 2019*, BBC News (Last Results Update Feb. 26, 2019), https://www.bbc.co.uk/news/resources/idt-f0b25208-4a1d-4068-a204-940cbe88d1d3; *Why INEC's Yakubu Declared Buhari Winner of 2019 Presidential Election*, Vanguard (Feb. 27, 2019), https://www.vanguardngr.com/2019/02/why-inecs-yakubu-declared-buhari-winner-of-2019-presidential-election/; *Kourani v. U.S. DOJ*, 213 Fed. App'x 79, 82 (2d Cir. 2007) ("[W]e take judicial notice that Hizbollah won a substantial portion of the votes in southern Lebanon during the June 2005 parliamentary elections."); *Latifi v. Gonzales*, 430 F.3d 103, 106 n.1 (2d Cir. 2005) ("[W]e take judicial notice of the fact that the Democratic Party returned to power in Albania through general elections in July.").  Plaintiff does not specify the "public information" that allegedly "had it that Plaintiff was in the lead" prior to approximately May 2018.  (SAC ¶ 24).

Plaintiff pleads no such special or specific duty here.  Certainly, he does not (and could not plausibly) plead that Chase had a duty to ensure that he had sufficient access to funds and credit to mount a successful presidential bid in Nigeria.  Chase cannot be considered to owe a "special" duty to each of its customers to protect them from the emotional distress caused by declined transactions or the loss of unique opportunities because of negative credit reports.  *Cf. Kelly*, 717 F. Supp. at 235 ("Certainly a corporation has a duty to act honestly and in good faith in all its employment practices.  Even under the most optimal circumstances, however, termination of an employee is likely to give rise to bad feelings and anxiety.  This cannot mean that every adverse employment decision may give rise to a claim of negligent infliction of emotional distress.").  Nor can a negligent infliction of emotional distress claim be premised on a generalized duty not to discriminate, owed by all companies under federal statutory law.

As Plaintiff fails to plead a cognizable claim for negligent infliction of emotional distress, the claim should be dismissed.

### D. Even if the Claim Were Not Preempted, Plaintiff Fails to State a Claim for Gross Negligence.

Plaintiff pleads that Chase acted with gross negligence when it closed Plaintiff's bank accounts "without cause" and "unfairly opened the corporate veil of the [Church] . . . to hold Plaintiff accountable for the negative balance on the corporation account."  (SAC ¶¶ 3-4, 44).  Plaintiff also appears to plead that Chase acted with gross negligence when it notified credit reporting bureaus of the Church's negative balance.  (*See id.* ¶ 44).

"The elements of a negligence claim under New York law are: '(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach.'"  *Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (citations omitted).  "To prevail on a claim for gross negligence, plaintiff must establish each of the three

11

previously described elements for negligence . . . plus a fourth element, namely, that defendant's conduct evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 368 (S.D.N.Y. 2008) (internal quotation marks and citations omitted), *aff'd* 337 Fed. App'x 7 (2d Cir. 2009); *Colnaghi, USA. v. Jewelers Prot. Servs., Ltd*., 81 N.Y.2d 821, 823-24 (1993). "Stated differently, a party is grossly negligent when it fails 'to exercise even slight care' or 'slight diligence.'" *Ryan v. IM Kapco, Inc.*, 88 A.D.3d 682, 683 (2d Dep't 2011) (citation omitted); *see also Berger v. Bd. of Regents*, 178 A.D.2d 748, 751 (3d Dep't 1991) ("In order to support a finding of gross negligence, the conduct must be 'egregious.'") (citation omitted).

Here, Plaintiff has failed to plead a claim for gross negligence because he cannot plead that Chase was negligent, let alone grossly negligent. The terms of Plaintiff's and the Church's contracts with Chase expressly authorized Chase to close Plaintiff's account and to hold Plaintiff responsible for the Church's debt.

When Plaintiff opened the Church's business credit card, he agreed that he was personally liable for payment of all balances incurred on the Church's card. First, Plaintiff signed the Disclosure, which expressly provides that: "I understand that I am personally responsible for payment of all balances incurred on all cards associated with this account . . . [and] that if I leave the employment of the Company, I will continue to be responsible for the outstanding balances . . . ." (*See* Kiebzak Decl. ¶ 5, Exh. B).

Similarly, in opening the credit card, Plaintiff agreed to the terms and conditions of the BCA, which also made him personally liable for the Church's debts. (*See Id*. ¶ 7, Exh. C).[7]

---

[7]    While Plaintiff's name is not printed on the Disclosure, there is no dispute that Plaintiff applied for the Church's credit card. (*See* Keibzak Decl., Exh. A) (listing Nicolas Uagbor as the primary applicant). Moreover, a cursory comparison of the signatures on the Disclosure (*id.*, Exh. B) and the signature cards

Various provisions in the BCA make this liability clear.  First, the BCA provides, "You are responsible for any use of your account by an authorized user or anyone else that you permit to use your account."  (*Id.*, Exh. C, at 2).  Second, the BCA provides that even if an account is closed or suspended, "You remain responsible for your balance."  Finally, the BCA makes clear that:

> The words 'you', 'your' and yours mean everyone responsible for this account, including the company acting through its authorizing officer, and the **person who applied for the account and provided his/her social security number**. You are legally obligated to pay for all purchases, cash advances, and all fees and charges incurred on the account, from the opening of the account. You are liable for all amounts incurred by any authorized user (whether billed or unbilled) prior to the time that (a) you have contacted us verbally (and confirm such verbal notification in writing within five (5) business days) advising us that such authorized user is no longer authorized to use the card or account, and (b) you obtain the card, if applicable, issued to such authorized user and return it to us.

(*Id.* at 10) (emphasis added).  Under the BCA, Plaintiff, as the individual who opened his Church business card, was responsible for its balance.  Thus, Chase was also authorized by agreement to report any delinquencies in payment on the Church's account to credit reporting agencies as Plaintiff's delinquencies.  (*Id.*).

Moreover, to the extent Plaintiff's gross negligence claim is based on the closure of his bank accounts, the DAA governing his individual and business deposit accounts expressly permitted such closure: "Either you or the Bank may close your Account at any time with or without cause."  (*See* Deck Decl., Exh. A at 31).[8]   Indeed, Plaintiff admits that it is

---

for Plaintiff's business deposit account (Deck Decl., Exhs. O & P) confirms that Plaintiff signed the Disclosure, and thus agreed to be personally liable for the Church's debts.  (*See* Keibzak Decl., Exh. B).

[8]      While the DAA has been amended several times, this language has remained substantially the same.  (*See* Deck Decl. Exh. B at 19 ("Either you or the Bank may close your Account at any time with or without cause"); Exh. C at 18 (same); Exh. D at 11 (same); Exh. E at 14 ("Either you or we may close your account (other than a CD) at any time for any reason or no reason"); Exh. F at 15 (same); Exh. G at 15 ("Either you or we may close your account (other than a CD) at any time for any reason or no reason without prior

"understandable" for a bank to be able to "open and close a customer's account at will[.]"  (SAC ¶ 26).

Finally, Plaintiff fails to plead facts supporting his conclusory assertion that Chase's alleged errors rose to the level of gross negligence.  Nothing in the Second Amended Complaint plausibly suggests that Chase's purported mistakes in closing Plaintiff's accounts or contacting credit reporting agencies were "egregious" or "evince[d] a reckless disregard for the rights of others."[9]  (*See supra*).  Accordingly, Plaintiff's gross negligence claim should be dismissed.

### E.  The Economic Loss Doctrine Bars Plaintiff's Negligence Claims.

Finally, even if Chase's conduct did not comport with its obligations under the applicable account agreements, which Chase denies, Plaintiff's negligence claims would still be barred.  "The economic loss doctrine bars a plaintiff from recovering damages by bringing a tort claim for an injury that 'is primarily the result of economic injury for which a breach of contract claim is available.'"  *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14-CV-10104 (VEC), 2017 U.S. Dist. LEXIS 145044, at *50 (S.D.N.Y. Sep. 7, 2017) (citation omitted).  "Courts in this District have routinely dismissed tort claims that sound in breach of contract—that is, where 'the injury and the manner in which the injury occurred and the damages sought persuade us that plaintiff's remedy lies in the enforcement of contract obligations.'"  *Id.* (citing cases).

Here, Plaintiff seeks to recover only economic losses, and the scope of Chase's obligations and duties to Plaintiff are defined in the applicable account agreements.  The negligence claims are therefore barred under the economic loss doctrine.  *See BNP Paribas Mortg. Corp. v. Bank of*

---

notice"); Exh. H at 13 (same); Exh. I at 13 (same); Exh. J at 13 (same); Exh. K at 13 (same); Exh. L at 13 (same); Exh. M at 13 (same); Exh. N at 13 (same)).

[9]     Plaintiff's allegations of intentional discrimination obviously cannot be used to support a *negligence* claim.

*Am., N.A.*, 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013); *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*, 734 F. Supp. 2d 368, 378 (S.D.N.Y. 2010); *see also Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 670 (S.D.N.Y. 2008) ("[C]ourts have found that in actions involving the contractual duties of corporations and financial institutions, a negligence action may not be maintained and parties must proceed under a contract theory.").

### F.  Plaintiff's Request for Punitive Damages Lacks Legal Basis.

Plaintiff requests punitive damages in excess of $1,000,000.  (SAC ¶ 8).  In framing this request, he appears to rely on 42 U.S.C. § 1981a.  (*See* SAC ¶ 51 [closely tracking the language of § 1981a(a)(1)]).  That statute, however, applies only to "[d]amages in cases of intentional discrimination *in employment*" under Title VII.  *See* 42 U.S.C. § 1981a (heading) (emphasis added); *see also Frederick v. JetBlue Airways Corp.*, No. 14-CV-7238 (DLI)(RER), 2016 U.S. Dist. LEXIS 44406, at *27 (E.D.N.Y. Mar. 31, 2016) (punitive damages "are available under § 1981a based on liability under Title VII, but are not available under § 1981"), *aff'd on other grounds*, 671 Fed. App'x 831 (2d Cir. 2016).  Indeed, as Plaintiff acknowledges, section 1981a authorizes punitive damages only "[i]n an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-5 or 2000e-16)" (SAC ¶ 51), two sections that cover employment discrimination.  As this is not an employment discrimination case, under the Civil Rights Act, punitive damages are not available here.

Nor does Plaintiff plead any basis for punitive damages on his common law negligence claims.  For the reasons stated above, the relationship between Plaintiff and Chase is governed by contract, and under New York law, "[i]t has always been held that punitive damages are not available for mere breach of contract, for in such a case only a private wrong, and not a public right, is involved."  *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 358 (1976).  Only where the conduct "constituting, accompanying, or associated with the breach of contract is (1) actionable as

15

an independent tort, (2) sufficiently egregious, and (3) part of a pattern of similar conduct directed at the public generally," can punitive damages be awarded in connection with such a claim. *Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.*, 715 F. App'x 54, 56 (2d Cir. 2017).  Here, Plaintiff does not plead "egregious" conduct that is "part of a pattern of similar conduct directed at the public generally."  At most, Plaintiff pleads a single incident that affected an unspecified number of Church-affiliated individuals.  No harm to the broader public is alleged.  Accordingly, Plaintiff's demand for punitive damages should be denied.

## **CONCLUSION**

For all the foregoing reasons, Chase respectfully requests that this Court grant its motion to dismiss Plaintiff's Second Amended Complaint with prejudice and grant such other and further relief as the Court deems just and proper.

Dated:  August 30, 2019

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Aaron Van Nostrand*
    Aaron Van Nostrand
    Alena Markley
The MetLife Building,
200 Park Avenue
New York, New York 10166
(212) 801-9200
vannostranda@gtlaw.com
markleya@gtlaw.com

*Attorneys for Defendant JPMorgan Chase Bank, N.A., f/k/a Chase Bank USA, N.A., improperly named as Chase Bank*