UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



NICOLAS FELIX,

                Plaintiff,

    -against-

CHASE BANK,

                Defendant.

MEMORANDUM & ORDER
18-CV-4442 (NGG) (SJB)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Nicolas Felix brings this action against Defendant Chase Bank[1] ("Chase") asserting causes of action under 42 U.S.C. § 1981 and New York common law. (*See* Third Amended Complaint ("TAC") (Dkt. 34).) Plaintiff's claims arise out of Chase's closure of Plaintiff's three personal bank accounts, as well as three bank accounts Plaintiff maintained on behalf of the Church where Plaintiff is the senior pastor. Before the court is Chase's motion to dismiss (Dkt. 27) Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendant's motion is GRANTED.

I. BACKGROUND

A. Factual Background

The court takes the following statement of facts from Plaintiff's TAC, the well-pleaded allegations of which the court accepts as true for purposes of Chase's motion to dismiss. *See N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017).

---

[1] Defendant, which was formerly known as Chase Bank USA, N.A., is currently known as JPMorgan Chase Bank, N.A. (*See* Def. Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. 28).) Because the complaint and the parties' moving papers refer to Defendant as Chase, however, the court will do the same for the purpose of deciding the instant motion.

1

Plaintiff, who is Nigerian-American, has maintained personal bank accounts and a credit card with Chase since 2008. (TAC ¶¶ 14, 18.) In 2014, Plaintiff opened a business checking and savings account (as well as a credit card) with Chase on behalf of Miracle Center International (the "Church") where Plaintiff is the senior pastor. (Id. ¶ 14.) Though the Church carried a negative balance on the Chase credit card, it was up to date on its installment payments. (Id. ¶¶ 17, 19.) Plaintiff, who is the sole signatory for the Church accounts, had never defaulted on any account payments and did not carry a negative balance on any of his personal Chase accounts. (Id. ¶¶ 19, 21, 30.)

In or around May 2018, Chase closed both Plaintiff's personal accounts and the Church's accounts without notification. (Id. ¶ 20.) Chase also closed a joint account Plaintiff shared with his wife, as well as his wife's personal account. (Id.) At the time, Plaintiff was a candidate for President in Nigeria, which was known to the Chase relationship bank manager (the "Chase Manager") with whom Plaintiff regularly dealt. (Id. ¶¶ 20, 24.) As a result of the account closures, Plaintiff was unable to withdraw cash or complete credit card transactions. (Id. ¶¶ 20, 25.) Additionally, Chase transferred the negative balance of the Church's account to Plaintiff and filed negative credit reports against him with all three major credit bureaus. (Id. ¶ 23.) When Plaintiff returned from Nigeria, other Church employees of Nigerian descent told Plaintiff that Chase had closed their accounts as well. (Id. ¶ 22.) Chase allegedly did not close the accounts of non-Nigerian Church employees (Id. ¶ 5.)

Plaintiff inquired about the reason for the account closures and credit transfer, but the Chase Manager told Plaintiff that she was not allowed to discuss the closures and showed Plaintiff a notation on her company computer stating that Plaintiff could no longer bank with Chase. (Id. ¶ 25.) The Church's members are predominantly black with people of Nigeran descent comprising

a large portion of its membership. (*Id.* ¶ 28.) Plaintiff alleges that while Chase closed all the accounts of Church employees of Nigerian descent, Chase did not close the accounts of non-Nigerian Church employees.[2] (*Id.* ¶¶ 22, 28.). In addition, Plaintiff alleges that Chase did not discriminate against other, predominantly white Churches in the area. (*Id.* ¶ 28.) Plaintiff alleges that Chase's discrimination caused him "mental distress" and other physical symptoms, as well as emotional distress because "he may never have another opportunity to win the presidency [of Nigeria]." (*Id.* 29.)

As a result of the foregoing events, Plaintiff alleges that Chase has engaged in racial discrimination under 42 U.S.C. § 1981, and that Chase is also liable for causing negligent infliction of emotional distress in addition to gross negligence under New York law for damaging Plaintiff's financial credit and ruining Plaintiff's ambition to run for President of Nigeria. (*Id.* ¶¶ 32, 34, 44.)

### B. Procedural History

Plaintiff filed this action *pro se* on August 3, 2018. (Compl. (Dkt. 1).) On October 18, 2018, Defendant filed a motion to dismiss for failure to state a claim. (Def.'s First Mot. to Dismiss (Dkt. 12).) Judge Donnelly granted Defendant's motion to dismiss on May 6, 2019, and granted Plaintiff leave to file an Amended Complaint. (Mem. & Order (Dkt. 20).)

On June 3, 2019, Plaintiff obtained counsel and filed an Amended Complaint. (Am. Compl. (Dkt. 22).) The case was reassigned to the undersigned on June 18, 2019. (June 18, 2019 Order Reassigning Case.) Plaintiff filed a Second Amended Complaint ("SAC") on July 26, 2019. (Second Am. Compl. (Dkt. 25).)

---

[2] TAC ¶ 22 refers to "the non-Nigerian employee," but since TAC ¶ 5 refers to "non-Nigerian Americans" and ¶ 28 refers to "non-Nigerian employee(s)," the court assumes for the purposes of Plaintiff's TAC that there is more than one non-Nigerian Church employee.

Defendant filed a motion to dismiss the SAC for failure to state a claim on August 30, 2019. (Def.'s Second Mot. to Dismiss (Dkt. 27).)

Plaintiff filed the TAC (which he labeled "Second Amended Complaint") on October 21, 2019. (TAC.) On November 25, 2019, the court dismissed Defendant's motion to dismiss as moot in light of the TAC. (Nov. 25, 2019 Order Denying Def.'s Second Mot. to Dismiss as Moot.) The same day, Defendant filed a motion for reconsideration of the dismissal order noting that the TAC is identical to the SAC. (Def. Mot. for Recons. (Dkt. 35).) On December 9, 2019, the court granted Defendant's motion for reconsideration and stated that the court would consider Defendant's motion to dismiss as against the TAC. (December 9, 2019 Order Granting Mot. for Recons.) On December 10, 2019, Plaintiff filed a cross motion for reconsideration in response to the court's order that it would consider Defendant's motion to dismiss as against the TAC, urging the court to resolve the case on the merits. (Pl. Cross Mot. for Recons. (Dkt. 36).)

## II. LEGAL STANDARD

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In reviewing a complaint, the court must accept as true all allegations of fact, and draw all reasonable inferences from these allegations in favor of the plaintiff. *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Additionally, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility "is not akin to a 'probability requirement,'" but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '*[f]actual* allegations must be enough to raise a right to relief above the speculative level.'" *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (emphasis in original) (quoting *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

Defendant contends that each of Plaintiff's three causes of action should be dismissed for failure to state a claim, and additionally that preemption and economic loss doctrine bar Plaintiff's negligence claims. (*See* Mem. at 5-15.)

### A. First Cause of Action—Racial Discrimination

Plaintiff claims that, in closing both his bank accounts and those of the Church, Chase denied Plaintiff the same right to make and enforce contracts as white citizens, in violation of 42 U.S.C. § 1981, which provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security

of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Section 1981 "provides a cause of action for discrimination on the basis of race, which includes 'ancestry or ethnic characteristics,' but not for discrimination based 'solely on the place or nation of the plaintiff's origin.'" *Nadesan v. Citizens Fin. Grp.*, 673 F. App'x 47, 49 (2d Cir. 2016) (summary order) (quoting *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (alterations adopted). "[T]o establish a § 1981 claim, a plaintiff must show: (1) that he is a member of a racial minority; (2) the defendant's intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981." *Rojas v. Signature Bank*, No. 18-CV-6757 (KAM), 2019 WL 1333257, at *2 (E.D.N.Y. Mar. 25, 2019) (citing *Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 261 (2d Cir. 2000)).

At the pleading stage, "the court does not apply the familiar *McDonnell Douglas* burden shifting test used to analyze the evidentiary support for discrimination claims, but rather generally assesses the plausibility of the plaintiff's claim based on the facts alleged." *McDowell v. N. Shore-Long Island Jewish Health Sys., Inc.*, 788 F. Supp. 2d 78, 81 (E.D.N.Y. 2011); *see also Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) ("The facts required by *Iqbal* to be alleged in the complaint . . . need only give plausible support to a minimal inference of discriminatory motivation.").

Here, the court must dismiss Plaintiff's claim because Plaintiff does not allege facts that Chase treated him differently because of his race, as opposed to his national origin. Throughout his complaint, Plaintiff identifies himself as "Nigerian" or "Nigerian-

American," and alleges that Chase treated him (and other Nigeran Church employees) differently on that basis. (*See* TAC ¶¶ 3, 5, 15, 22, 24, 28.) For example, Plaintiff alleges that he was "informed by the employees of the Church who are of the Nigerian ethnic background that the account of all of them had been closed without any prior warnings," and that "the only account[s] not closed belong to the non-Nigerian employee[s]." (*Id.* ¶ 22.) In fact, the complaint explicitly frames Plaintiff's claim in the context of national original discrimination, alleging that Chase's decision to "targe[t] accounts of only the Nigerian employees of the Church Organization while it did not touch that of the non-Nigerian employee[s]" is evidence "that Chase was motivated by [c]ountry of origin discrimination and such conduct is reprehensible." (*Id.* ¶ 28; *see also Id.* ¶ 44 (alleging that Chase's manager's conduct "was motivated by []President [Trump's] calumny against Nigerians").) These allegations, taken as true, may very well sufficiently allege a claim for national origin discrimination, as they give "plausible support" to the "minimal inference" required at the pleading stage that Chase discriminated against Plaintiff because he is Nigerian. *See Littlejohn*, 795 F.3d at 312 (citation omitted). Yet, such a claim is not cognizable under § 1981. *See Nadesan*, 673 F. App'x at 47.

The court is cognizant of the fact that "race and national origin discrimination claims may substantially overlap or even be indistinguishable depending on the specific facts of a case," *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003), but there is no such "overlap" with respect to Plaintiff's allegations in this case. To the contrary, Plaintiff's disparate treatment allegations entirely hinge on how Chase treated Nigerians and non-Nigerians differently. (*See, e.g.*, TAC ¶ 28.) Plaintiff does not plead facts to establish, for example, the race or ethnicity of the "non-Nigerian [Church] employee[s]" whose accounts Chase allegedly did not close. Plaintiff does allege that the Church's *membership* is "predominantly black," but does not provide similar information about the

7

Church's *employees*, which is the group of people who allegedly also had accounts with Chase.

The only allegation in the complaint that directly addresses race discrimination is that, in contrast to Plaintiff's Church with its "predominantly black membership... none of the other Churches around, owned by other ethnic groups especially whites, [w]ere so disparately and unfairly discriminated against." (*Id.*) Yet, as explained above, the relevant comparators to Plaintiff for the purposes of his disparate treatment claim are not other Churches, but other individuals. *See Akyar v. TD Bank US Holding Co.*, No. 18-CF-379 (VSB), 2018 WL 4356734, at *4 (S.D.N.Y. Sep. 12, 2018) (noting that in a disparate treatment claim, the "comparators' circumstances need not be identical, but there must be a reasonably close resemblance of facts and circumstances."). The complaint alleges no information about such relevant comparators. In addition, references to "other Churches around" not being "disparately and unfairly discriminated against" without *any* more detail—like, for instance, the names of the other Churches, whether those Churches and their employees were Chase customers and, if so, the status of those accounts—is simply insufficient for the purposes of a disparate treatment claim.

The allegations in Plaintiff's complaint are troubling. Yet, § 1981 does not recognize a claim for national origin discrimination, which is all that Plaintiff has pleaded. This is not to say that, by adding new factual allegations, Plaintiff could not successfully amend his complaint to properly plead racial discrimination under § 1981. As it stands now, however, Plaintiff fails to state a claim under § 1981, and Defendant's motion to dismiss is granted.

### B. Remaining State Law Claims

Having determined that Plaintiff's federal claim should be dismissed, the court sees no reason to retain jurisdiction over

8

Plaintiff's remaining state law claims. The court therefore declines to exercise supplemental jurisdiction over Plaintiff's remaining claims. *See* 28 U.S.C. § 1267(c)(3); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) ("[W]hen the federal claims are dismissed the state claims should be dismissed as well." (citations and quotation marks omitted)).

### C. Plaintiff's Cross Motion for Reconsideration

Plaintiff has also filed a cross motion for reconsideration in the form of a letter filed with the court in response to the court's granting of Defendant's motion for reconsideration. (Dkt. 36.) Plaintiff's primary request in his letter motion is for the court not to dismiss Plaintiff's complaint with prejudice because of the duplicative filing, and to instead resolve Plaintiff's case on the merits. (*Id.*) Because the court has resolved Plaintiff's complaint on the merits in this opinion, Plaintiff's cross motion for reconsideration is denied as moot.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 27) is GRANTED, and Plaintiff's cross motion for reconsideration (Dkt. 36) is DENIED as moot. The Clerk of Court is respectfully DIRECTED to enter judgment and close the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
March 12, 2020

NICHOLAS G. GARAUFIS
United States District Judge